## EVASION OF THE LICENSE STATUTE RELATING TO CHATTEL LOANS.

Common Pleas Court of Franklin County.

BEN L. THUMA v. STATE OF OHIO, AND CHESTER F. BIGHAM v. STATE OF OHIO.

Decided, October 20, 1913.

*Loans on Chattels or Wages—Application of the Statutory Requirement as to the Licensing of Lenders—Evasion of the Statute Held to be a Transgression Thereof—Section 6364-1.*

The loaning of money on chattel or personal property of any kind, without having first obtained a license therefor as provided by statute, is a punishable offense, notwithstanding the paper which was signed by the borrower and which he was led to believe was a chattel mortgage, was not a mortgage or valid instrument which could be enforced against him.

DILLON, J.

The plaintiff in error, Thuma, was charged in the police court of the city of Columbus with a violation of the act to regulate and license the loaning of money upon chattel or personal property of any kind, etc.   102 O. L., 469.

The charge in brief is that the defendant did unlawfully "carry on the business of making loans upon personal property by then and there loaning the sum of $50 to one Nettie Johnson upon certain personal property, without first having then and there obtained a license so to do from the Secretary of State."

The facts, as they were developed at the trial of the case, present a unique situation. From a consideration of this case and another somewhat similar case (*Bigham* v. *State*) which is also decided herein, it develops that after the passage of the act above mentioned, some of the so-called chattel loan concerns have adopted various plans to escape a violation of this statute by evading a literal trangression of its terms.

Bearing in mind the true function of the court, on the one hand to avoid any unwarranted extension of legislation to cover conditions not fairly embraced within the terms of the act, *i. e.,*

so-called "judge-made legislation"—and on the other hand to give to legislation the fair interpretation of the terms used, having reference to the evils sought to be cured, the court has determined that the business as carried on and conducted by the defendants below fell within the terms of the statute.

The affidavit would have been sufficient to have charged that the defendant carried on the business of making loans upon personal property, etc., without specifying any one particular action. But the particular transaction which was relied upon by the state is typical of the business as carried on generally.

The applicant for a loan signed what was represented to her to be a chattel mortgage, and she firmly and positively believed that she had signed such chattel mortgage. Upon the payment thereof all the wording of the instrument was cut off and the lower part containing her signature, stamped paid, was returned to her. A blank form of the instrument as used was produced by the defendant below, however. The defendant testifies that he was the general manager of the business, which was owned by a partnership consisting of two men. The applicant was asked for and did give a list of certain chattel property. The paper writing therefor, which the applicant supposed and believed to be a chattel mortgage, was given her and she signed the same. This instrument recites that the applicant, in consideration of "the United States Credit Agency Company signing as a surety for her on the loan, did convey and mortgage the said goods and chattels unto said agency company." This also contained the usual conditions as to this credit agency having gone upon the applicant's note for surety, etc. As a matter of fact no goods were described in the instrument.

There was a further provision in the instrument whereby she paid to said credit agency a certain sum of money for its services. The note itself was made out to the defendant below, or to some one member of his firm. The note likewise when paid had this information torn from it and only the lower part of the note containing the signatures was stamped paid and returned to the applicant.

The reason for thus cutting out the body of the chattel mortgage, etc., was frankly stated by the defendant to be for the

purpose of concealing from their customers the fact that it was not a chattel mortgage, etc.

The defendant below testified that when the applicant signed the paper, as she supposed a chattel mortgage, there was nothing on it except the printed matter, and his name as a witness. It was dated and numbered to conform with the note, however. He further states that there was no description of furniture in it, the list of furniture which had been furnished according to him being kept separate.

The nature of the business is further illustrated by notices which were sent regularly to the applicant calling attention to the date when the next payment must be made, and quoting the law of Ohio, in prominent type, which makes it a crime for any person without the consent of the owner, to remove his mortgaged property from the place where it was situated, etc.

The first claim of counsel for this plaintiff in error is that this law does not apply to the defendant, who was general manager of the loan company. I concede that if the company itself as such partnership, had taken out the license as required by the statute, that mere employees of that company would not be compelled to take out a license. But certainly this protection to an employee can not be extended to a general manager of a concern having, as he testifies, been in the business for many years and who, with full knowledge, enters into and becomes one of the joint principals in the commission of the unlawful act.

The statute very plainly says that no person, firm or corporation shall engage or continue in the business of making loans upon personal property without having obtained a license to do so.

From all the facts in this case it is perfectly clear that each and every one of these parties were joint conspirators in the business of making loans without license, and each is responsible, therefore, for the act of the other, since they are engaged in a common plan. For these reasons. I do not consider it was necessary that the defendant below should be charged as an employee of the partnership.

Counsel for plaintiff in error frankly states that this was a "phony" mortgage and that the whole transaction was not

worth the paper it was written on, but the applicant thought she had signed a mortgage and was led to believe that she had executed a mortgage in the usual way. Necessarily the result, so far as the loan company is concerned, was the same as if she had given a genuine chattel mortgage.

In the Bigham case mentioned above, the facts are somewhat different. The same charge was made in that case. In Bigham's case the usual inquiry was made as to the furniture and as to any claim thereon, there being, according to the application signed by the applicant, a balance owing the furniture company of $35.

Here again the applicant positively swears that he signed a chattel mortgage in addition to the other paper statements as to the property. The defendant below produces a paper which is not a chattel mortgage at all, and simply recites that the applicant and his wife make application for a loan of $35, and appoints the City Loan Company as the agent of the applicant to investigate the title of the within described personal property, and to investigate the applicant's standing and credit in the city of Columbus in the manner that seemed best to them. There were a few other recitals; among other things, the amount which they agreed to pay, certain sums of money, commissions, etc. Then follows a most significant statement: ''In negotiating and procuring this loan we have signed an application, two promissory notes and this paper, and no other.'' The evidence of the applicant tends to show that not only did they sign this paper, but a real chattel mortgage besides. Whether they did or not need not be here determined since the court is of the opinion that the case should be decided upon the transaction as testified to by the defendant in this respect.

In this case, as an instance of the deception practiced, a short time prior to this loan in the case of another customer who desired to move from her home at 360 North 20th street to 200 North 20th street, a certificate was given to that particular customer giving her permission to move the household goods. This customer evidently also was duly impressed with the statutes of Ohio with reference to moving mortgaged property.

Taking both the foregoing cases together, the simple question arises whether or not these transactions constituted ''loans

upon chattels or personal property of any kind whatsoever."
It is claimed on the part of counsel, and with much force, that
to constitute a loan upon personal property, that personal
property must be mortgaged or pledged. In support of their
contention they present the case of State' v. Cotton, 128 La., 749.
In that case an act was under review which imposed a license
tax upon persons engaged in the business of lending money on
wages or salaries, or purchasing time, wages or salaries of wage
earners. In that case the state attempted to construe the
phrase "lend money on wages or salaries" meant lending money
to wage or salary earners. The court held that a loan on wages
meant a loan by virtue of a pledge, assignment or mortgage.

I am of opinion that the expression of the statute "business
of making loans upon chattels or personal property of any kind,"
having in mind the entire statute and its purpose before me,
demands a wider interpretation than a limitation to chattel
mortgages or pledge. It is not so limited by express terms. If
it had been desired to so limit it it would have been a very easy
and simple thing for the Legislature to have said so. We must
remember that it is the business that is sought to be regulated
and, therefore, any restraint upon chattels of the borrower which
thereby secures to the lender any degree of security whatever,
however slight, constitutes a loan upon personal property that
is within the meaning of the statute. If the transaction did not
avail to the lender some advantage, real or otherwise, why so
much care taken with reference to the personal property?

It is claimed on the part of counsel for Bigham that this
loan was made not upon any theory of restraint, pledge or
mortgage upon his personal property, but solely upon the credit
and standing of the borrower, and therefore was made purely
upon the moral risk.

I am aware that a court might close its eyes and ignore the
real transaction, and by some strict and unnecessarily technical
construction arrive at that conclusion; but a reading of the
transcript of the evidence in each case precludes any such con-
clusion here. The conviction, therefore, is not for evading the
law.

Counsel are correct in the announcement that there is no
statute providing for a punishment for evading the law. It is

the fact that they have trangressed this law in substance which is the basis of the court's decision here.

In the Bigham case the attention of the court is called to a number of erroneous rulings in the court below. I consider unfortunate the objections made by the prosecuting attorney and the rulings in the court below with reference to the defendant's exhibits one to six. But as the exhibits were finally offered and received in evidence the court can not find any prejudicial error in that respect. In such of these cases a witness was called from the Secretary of State's office to prove that no license had been taken out. And in the Bigham case counsel for the defendant below vigorously objected to any evidence on the subject. It is pertinent here to observe that the proving of a license is an exception to the rule of evidence requiring putting the burden upon the state. The fact of a person possessing or not possessing a license being peculiarly within the knowledge of the defendant, no evidence on that subject is necessary to be adduced by the state. The burden is upon the defendant to show he has a license.